UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.  CASE NO. 3:23-cr-67-TJC-JBT

DWAYNE ERIC THOMPSON

**O R D E R**

This case is before the Court on Defendant Dwayne Eric Thompson's Motion for New Trial and Renewed Motion for Judgment of Acquittal (Doc. 59), filed on August 8, 2023. On July 11, 2023, following a two-day jury trial, the jury found Thompson guilty of one count of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 53). During trial, Thompson timely moved for judgment of acquittal, which the Court denied. (Doc. 63 at 80:8–22). Post verdict, Thompson now timely moves for judgment of acquittal and new trial, both of which the Government opposes. (Docs. 59, 60).

**I.   THOMPSON'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL**

Under Rule 29(c) of the Federal Rules of Criminal Procedure, a defendant is entitled to a judgment of acquittal if the evidence, viewed in the light most favorable to the government, was insufficient to support the jury's guilty verdict. United States v. Williams, 390 F.3d 1319, 1323 (11th Cir. 2004) (citations omitted). "All credibility choices must be made in support of the jury's

verdict." Id. at 1323 (citations omitted). "This test applies regardless of whether the evidence is direct or circumstantial." Id. at 1324 (citations omitted). "Evidence is sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009) (quotation marks and citation omitted). Thus, "it is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could not have found guilt beyond a reasonable doubt." Id. (quotation marks and citation omitted).

Thompson argues that there was insufficient evidence to support his conviction under 18 U.S.C. § 922(g)(1). Section 922(g)(1) requires the Government to prove beyond a reasonable doubt that (1) the defendant is a convicted felon, (2) the defendant knowingly possessed a firearm or ammunition, and (3) the firearm or ammunition was in or affecting commerce. 18 U.S.C. § 922(g)(1); United States v. Gunn, 369 F.3d 1229, 1235 (11th Cir. 2004). Thompson attacks the second element, knowing possession.

"Possession of a firearm may be actual or constructive. Constructive possession of a firearm exists when a defendant does not have actual possession but instead knowingly has the power or right, and intention to exercise dominion and control over the firearm." United States v. Perez, 661 F.3d 568, 576 (11th Cir. 2011) (citations omitted). "A defendant's presence in the vicinity

of a firearm or mere association with another who possesses that gun is insufficient; however, at the same time, '[t]he firearm need not be on or near the defendant's person in order to amount to knowing possession.'" Id. (quoting United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004).

Thompson argues the Government failed to prove that he constructively possessed a firearm. He distills the Government's evidence into two points: (1) the firearm was found in the center console of the vehicle Thompson owned and was driving at the time of his arrest, and (2) Thompson's DNA was found on the firearm. (Doc. 59 at 4–5). This, in and of itself, is more than enough to establish constructive possession.

Thompson correctly notes that mere proximity to the firearm does not constitute constructive possession. Id. at 4 (quoting United States v. Pedro, 999 F.2d 497, 501–02 (11th Cir. 1993). He also questions the significance of the DNA evidence because the Government's DNA expert's testified that Thompson's DNA could have been on the firearm through indirect transfer. (Doc. 59 at 5 n.1); see (Doc. 63 at 65:11–66:10). Under this theory, Thompson's DNA could have transferred to the firearm through proximity to objects he had previously touched, rather than from Thompson touching the firearm himself. See (Doc. 63 at 65:11–66:10). Thompson thus argues the jury could not have reasonably found that he knowingly constructively possessed a firearm. (Doc. 59 at 5).

3

However, though the DNA expert testified that indirect transfer of DNA from one surface to another was "possible," she explained that such transfers were "not very probable." (Doc. 63 at 66:1–10, 72:1–24). The jury could also have found significance in the arresting officer's testimony that Thompson resisted the officer's efforts to collect Thompson's DNA. Cf. United States v. Wright, 392 F.3d 1269, 1274 (11th Cir. 2004) (finding that the timing of a defendant's resistance to arrest could indicate he knew a firearm would be discovered in his vehicle during the post-arrest search).

Further, Thompson presented a defense witness who claimed ownership of the firearm and testified that he had left it in Thompson's car without Thompson's knowledge. In discrediting this witness's testimony to convict Thompson, the jury could have inferred that the opposite of his testimony was true. See United States v. Hasner, 340 F.3d 1261, 1272 (11th Cir. 2003) (citing United States v. Mejia, 82 F.3d 1032, 1038 (11th Cir. 1996) (abrogated on other grounds by Bloate v. United States, 559 U.S. 196 (2010)) ("A proper inference the jury can make from disbelieved testimony is that the opposite of the testimony is true.")). Considering the evidence presented at the trial in the light most favorable to the verdict, Thompson is not entitled to judgment of acquittal.

## II.  THOMPSON'S MOTION FOR NEW TRIAL

Thompson alternatively moves for a new trial under Rule 33(a) of the Federal Rules of Criminal Procedure. Under Rule 33(a), a court "may vacate

4

any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). Motions for a new trial are disfavored, see United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003), and the decision rests "within [the] sound discretion of the trial court." United States v. Vicaria, 12 F.3d 195, 198 (11th Cir. 1994) (citation omitted).

Thompson's argument for new trial is based on a note from the jury that they were deadlocked and the Court's subsequent decision to give a modified Allen charge. Within about an hour of the jury retiring to deliberate, the Court received several handwritten communications from the jury. See (Doc. 63 at 149:4, 151:15–25). The first was a request to watch the videos presented in evidence, which the Court addressed by sending a video player to the jury room. Id. at 145:21–24, 150:23–151:7; (Doc. 51-2). The jury then sent a second communication: "Can we get another verdict form." (Doc. 63 at 151:8–14); (Doc. 51-3). As the Court was preparing to give the jury a new verdict form, a third communication from the jury was delivered: "There are 11 Guilty and 1 not Guiltey [sic] What do we do they are ready to Go Home." (Doc. 51-4). The parties were brought back to the courtroom to discuss the third communication. As the parties were assembled in the courtroom but before any discussion took place, the jury returned the original verdict form, filled in, signed, and dated. (Doc. 51-5).

5

The verdict form, which had spaces next to the options "not guilty" and "guilty" for the jury to indicate their verdict, had "0" written next to "not guilty" and "12" written next to "guilty." Id. On closer examination, it appeared that the "0" had been written on top of a "1," and the "12" had been written on top of an "11." See id. A handwritten "no" appeared next to the words "so say we all." Id. And the form was dated October 11, 2023, rather than the correct date, July 11, 2023. Id.

**VERDICT FORM**

As to Count One of the Indictment, which charges Possession of a Firearm by a Convicted Felon, we, the Jury, find DWAYNE ERIC THOMPSON:

NOT GUILTY __0__   GUILTY __12__

SO SAY WE ALL, *No*

FOREPERSON'S SIGNATURE            DATE 10/11/2023

After hearing argument from the parties and denying Thompson's motion for mistrial, the Court brought the jury into the courtroom. (Doc. 63 at 162:5–6, 166:17–24). The Court recapped for the jury the communications it had received and explained that the signed verdict form was unclear. Id. at 167:8–169:3 The Court then told the jury that it would give them a second verdict form, gave the jurors a substantially modified Allen charge, and the jury retired again. Id. at

6

169:4–171:12. Within about two minutes of retiring, the jury returned the second verdict form, properly filled in, signed, and dated, unanimously finding Thompson guilty. Id. at 173:19–174:4, 179:11–17; (Doc. 53). The Court polled each member of the jury and each member affirmed that the verdict form represented his or her true verdict. (Doc. 63 at 175:10–176:14).

Trial courts have "broad discretion" to give an Allen charge, or to "instruct a deadlocked jury to keep deliberating." United States v. Davis, 779 F.3d 1305, 1311–12 (11th Cir. 2015) (citing Allen v. United States, 164 U.S. 492, 501–02 (1896)). The charge "must not coerce any juror to give up an honest belief." Id. (citations omitted). In the Eleventh Circuit, several non-exhaustive factors help analyze whether an Allen charge is improperly coercive:

> (1) whether the charge instructed the jurors that they are not expected to give up their honest beliefs about the weight of the evidence; (2) whether the jury was polled before the charge was given; (3) whether the charge was given after a second notification from the jury that there was difficulty reaching a verdict; and (4) the amount of time between giving the charge and the announcement of the verdict.

United States v. Jones, 518 F. App'x 741, 743 (11th Cir. 2013)[1] (citing United States v. Woodward, 531 F.3d 1352, 1364 (11th Cir. 2008)).

---

[1] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022).

7

Thompson argues that the Court's modified Allen charge was coercive. He notes that the jurors revealed their vote split before the Court charged them—which could heighten the possibility of coercion. (Doc. 59 at 8). He also emphasizes that the jurors returned a verdict within minutes of receiving the Allen charge—suggesting, he argues, that they did not actually deliberate. Id. He thus argues that the Court's modified Allen charge was unduly coercive and thus deprived him of his Sixth Amendment rights. Id.

The Court disagrees for two reasons. First, the timing strongly suggests that the first verdict form, though defective, reflected the jury's unanimous vote that Thompson was guilty. The original form revealed that although there had been an eleven-to-one split at some point, the jury was now trying to communicate a unanimous guilty verdict. See (Doc. 51-5). The jury's quick turnaround after receiving the second verdict form further solidifies that they had reached—but failed to properly communicate—the same unanimous verdict before the Court's Allen charge. All the jury needed, as it had previously requested, was a new verdict form. See (Doc. 51-3).

Second, the modified Allen charge the Court read to the jury was tailored to minimize the risk of coercion. The Court's charge reads in full:

> So, members of the jury, I'm going to ask that you continue your deliberations in an effort to agree on a verdict and decide this case. And I have a few additional comments I'd like for you to consider as you do so.

8

If you fail to agree on a verdict, the case will be left open and may have to be tried again. There's no reason to believe that the case can be tried again by either side any better or more exhaustively than it has been tried before you.

Any future jury must be selected in the same manner and from the same source as you were chosen. There's no reason to believe that the case could ever be submitted to 12 more conscientious, more impartial, or more competent to decide it, or that more or clearer evidence could be produced.

It's your duty to consult with one another and to consider each other's views and to discuss the evidence with the objective of reaching a just verdict, if you can do so, without compromising your individual judgment.

Each of you must decide the case for yourself, but only after discussion and impartial consideration of the case with your fellow jurors.

You should not be advocates for one side or the other. I ask you to reexamine your own personal views in light of the views of those jurors who disagree with you. You should not hesitate to change your opinion if you're convinced you're wrong.

Remember, though, that at all times no juror is expected to give up an honest belief about the weight and effect of the evidence. And you must remember that if the government fails to establish guilt beyond a reasonable doubt, that defendant must have a unanimous verdict of not guilty.

So I'm asking you to return and deliberate additionally with that additional guidance. We'll give you a new verdict form.

In light of the question I got from you and the verdict form, it appeared that you were trying to do something, but we weren't sure what. And so I . . . just wanted to give you that additional guidance.

[A]gain, it's very important . . . that nobody give up their honest beliefs, but everybody should reexamine their beliefs. It's very important that nobody feel coerced. Very important that you have your own free decision to make after you've listened to everything and considered it.

But I know you feel like you've been here and there was some indication you were ready to go home. You know, by . . . most trials, this was a very short trial. You've only been deliberating, really, a couple of hours. So I'm going to ask you to go back in and resume

9

> your deliberations and we'll await your verdict. Thank you, ladies and gentlemen.

(Doc. 63 at 169:11–171:10).

The Court started with the Modified Allen Charge from the Eleventh Circuit's pattern jury instructions. Eleventh Cir. Pattern Crim. Jury Instruction T5; (Doc. 63 at 164:24–165:5). The Court then made some changes, starting with omitting the sentences, "This is an important case. The trial has been expensive in time, effort, money, and emotional strain to both the defense and the prosecution." Instruction T5; see (Doc. 63 at 164:10–12). The Court also took out the clause emphasizing that "[a]nother trial would increase the cost to both sides." Instruction T5. Finally, the Court softened the paragraph recommending that holdouts reconsider their views, including omitting the sentence, "If a substantial majority of you are in favor of a conviction, those of you who disagree should reconsider whether your doubt is a reasonable one since it appears to make no effective impression upon the minds of the others." Instruction T5; see (Doc. 63 at 169:11–171:9). The Court also emphasized, twice, that no juror should give up his or her honest beliefs. (Doc. 63 at 170:11–24). The end effect was that the Court's modified Allen charge was significantly moderated to minimize the possibility of inappropriate pressure or coercion.

10

Considering the totality of the circumstances, the Court finds that jury gave a true verdict, as each member affirmed when polled, which was untainted by coercion. Thompson is therefore not entitled to a new trial.

Accordingly, it is hereby

**ORDERED:**

Defendant Dwayne Eric Thompson's Motion for New Trial and Renewed Motion for Judgment of Acquittal (Doc. 59) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida this 7th day of November, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

rmv
Copies:

Counsel of Record
U.S. Probation
U.S. Pretrial Services
U.S. Marshals Service
Defendant

11